UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WREN CORDES,** | **CIVIL ACTION** |
| Plaintiff | |
| **VERSUS** | **No. 12-2214** |
| **OSG SHIPMANAGMENT, LTD.,** | **SECTION "E"** |
| Defendant | |

### ORDER AND REASONS

Before the Court is a motion *in limine* filed by Plaintiff, Wren Cordes ("Plaintiff").[1] Plaintiff seeks to exclude the expert testimony of Captain Ronald L. Campana ("Capt. Campana") at trial. In the alternative, Plaintiff seeks relief from the scheduling order entered in the above-captioned matter in order to retain a marine safety expert. Defendant, OSG Ship Management UK, Ltd. ("OSG"), opposes the motion.[2] After carefully considering the parties' arguments, Capt. Campana's report and affidavit, and the law, the Court **DENIES** Plaintiff's motion in all respects for the following reasons.

### *Background*

As alleged in Plaintiff's complaint, Plaintiff is employed with Cooper/T. Smith Corporation ("Cooper/T. Smith") as a boat operator and line handler. On November 14, 2011, Plaintiff was receiving bow mooring lien from the tanker M/T OVERSEAS YELLOWSTONE (the "vessel") while the vessel was attempting to dock at the Ergon Terminal on the Mississippi River in Hymel, Louisiana. According to Plaintiff, the "line

---

[1] R. Doc. 12. At a March 28, 2013 status conference with the Court, Plaintiff requested relief from the scheduling order so that he could retain a marine safety expert. The Court instructed Plaintiff to file a written motion requesting relief. R. Doc. 11.

[2] R. Doc. 16.

1

became tangled[,] causing the wench to retrieve the line rather than pay out the line and further causing the shackle welded to the end of the line to spin from the dock wench and strike [P]laintiff in the hand."[3]  Plaintiff alleges that this accident resulted in "severe, debilitating, disfiguring and permanent injuries to his wrist."[4]  OSG was operating the vessel on November 14, 2011.[5]  Plaintiff contends that OSG's negligence caused his injuries and he seeks to recover against OSG for such injuries under general maritime law.[6]  Plaintiff designated this matter as a maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.[7]  Non-jury trial is scheduled to begin June 17, 2013.[8]

This Court entered a scheduling order in accordance with Rule 16 of the Federal Rules of Civil Procedure on November 26, 2012.[9]  The scheduling order provides that "[w]ritten reports of experts, as defined by Federal Rules of Civil Procedure 26(a)(2)(B), who may be witnesses for Plaintiffs, fully setting forth all matters about which they will testify and the basis therefor, shall be obtained and delivered to counsel for Defendant as soon as possible, but in no event later than **February 19, 2013**," and further provides a March 19, 2013 deadline for OSG to deliver its expert reports to Plaintiff's counsel.[10]  In addition, the parties' witness and exhibit lists were to be filed no later than March 19, 2013.

---

[3] R. Doc. 1 at p. 2.

[4] R. Doc. 1 at p. 2.

[5] R. Doc. 4 at p. 2.

[6] R. Doc. 1.

[7] R. Doc. 1 at p. 3.

[8] R. Doc. 7.

[9] R. Doc. 7.

[10] R. Doc. 7 at p. 1 (bold in original).

2

OSG retained Capt. Campana as a marine safety expert. Capt. Campana, who prepared a Rule 26(a)(2)(B) expert report, intends to testify at trial that OSG's negligence did not cause the November 14, 2011 accident. OSG timely delivered Capt. Campana's expert report to Plaintiff's counsel and timely filed its witness list, which indicates that Capt. Campana will be called as an expert witness.[11]

Plaintiff, who did not retain a marine safety expert, has moved *in limine* to exclude Capt. Campana's testimony because it does not satisfy Rule 702 of the Federal Rules of Evidence or *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and its progeny.[12] In essence, Plaintiff argues that Capt. Campana should not be permitted to testify because his testimony is unreliable.[13] In the alternative, Plaintiff requests an "opportunity to offer rebuttal evidence to expose [Capt. Campana's] . . . untruthful and unsupportable statements."[14] OSG responds that Plaintiff's motion "ask[s] the Court to completely disregard the Scheduling Order [by allowing him] to file an expert report almost two months after the deadline expired and after the deadline for disclosing trial witnesses."[15] OSG contends that "any extension of expert deadlines would prejudice

---

[11] R. Doc. 9 at p. 2.

[12] Plaintiff does not affirmatively argue in his motion that he seeks to have Capt. Campana's expert report excluded from evidence. Nevertheless, Plaintiff's memorandum repeatedly criticizes the contents of Capt. Campana's report. The Court, out of an abundance of caution, observes that an expert report is considered hearsay and is inadmissible at trial. *Marquette Transp. Co., Inc. v. Eagle Subaru*, 2010 WL 1558921, at *3 (E.D. La. Apr. 15, 2010) (Vance, J.). OSG has not listed Capt. Campana's expert report on its exhibit list. *See* R. Doc. 10. As a result, at this time the Court need not address whether such report *itself* is admissible because OSG has not indicated its intends to introduce the report into evidence.

[13] R. Doc. 12-1 at p. 1.

[14] R. Doc. 12-1 at p. 2.

[15] R. Doc. 16 at p. 11.

[OSG]'s ability to rebut any new expert testimony."[16]

## *Law and Analysis*

### I. Captain Campana's Opinions

The Federal Rules of Evidence permit an expert witness with "scientific, technical or other specialized knowledge" to testify at trial if such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue," so long as "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Courts, as "gatekeepers," are tasked with making a preliminary assessment whether expert testimony is both reliable and relevant. *See Pipiton v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993)). The expert's proponent has the burden to prove by a preponderance of the evidence that the expert's testimony satisfies Rule 702. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).

"Reliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). As another section of this Court has explained,

> A number of nonexclusive factors may be relevant to the reliability analysis, including: (1) whether the technique at issue has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community.

*Naquin v. Elevating Boats, LLC*, 2012 WL 1664257, at *4 (E.D. La. May 11, 2012) (Barbier,

---

[16] R. Doc. 16 at pp. 12-13.

4

J.) (citing *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004)). This reliability inquiry is a flexible one, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). In addition, the relevancy of proposed expert testimony is "not simply in the way all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003).

"[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact. *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (internal citations omitted).

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). Rule 702 also permits an expert to be qualified based on "knowledge, skill, experience, training, or education." *Hicks*, 389 F.3d at 524. " 'A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject .' " *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson*

*v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss*, 571 F.3d at 452.

Plaintiff argues that Capt. Campana's testimony is unreliable because he has not worked as a line handler.[17] To rebut Capt. Campana's assertions that OSG's negligence did not cause Plaintiff's injuries, Plaintiff submits an affidavit from Joseph Perez ("Perez"), a Cooper/T. Smith employee who has worked as a line handler for thirty-nine years.[18] In his affidavit, Perez avers that he has reviewed Capt. Campana's report and that, in his opinion, many of the expert's conclusions are "inconsistent with [his] experience."[19] The Court observes that Perez is not named on Plaintiff's witness list.[20] While the Court recognizes that Rule 702 permits experts to be qualified based on their skill, experience, or training, Plaintiff, in submitting the Perez affidavit, is seeking to interject expert testimony that was not timely disclosed in accordance with the scheduling order. Plaintiff shall not be be permitted to gain an advantage – to OSG's detriment – by disregarding the Court's orders. As a result, the Court declines to consider Perez's affidavit.

Furthermore, as to Plaintiff's argument that Capt. Campana's testimony is unreliable because he has not worked as a line handler, the Court finds such argument unpersuasive. Capt. Campana has extensive experience in marine navigation and safety. First, he has

---

[17] R. Doc. 12-1 at pp. 1-2.

[18] R. Doc. 12-5.

[19] R. Doc. 12-5 at p. 2.

[20] R. Doc. 8.

6

sailed as a deck officer and master on U.S.-flagged vessels for more than ten years. In his capacity as a deck officer, he was directly involved in mooring and unmooring vessels at many terminals on the Mississippi River and other U.S. ports. Second, from 1985 to 1996, Capt. Campana served as the dock liaison for Turner Marine Bulk Terminal ("Turner Marine") for all vessels that tied up at the terminal. In his capacity as dock liaison with Turner Marine, he coordinated the operations between terminal line handlers and the vessels and their pilots, often physically assisting the line handlers during the mooring and unmooring of vessels. Finally, Capt. Campana also served as dock liaison for the Burnside Terminal ("Burnside") from 1994 through 2006. In his capacity as dock liaison with Burnside, he performed the same duties as those he performed at Turner Marine. Given this extensive employment history in the maritime industry, the Court finds that Capt. Campana is qualified as an expert witness based on his experience. Because the Court concludes Capt. Campana's testimony will be helpful to the Court in understanding the evidence before it and determining facts in issue, he will be permitted to testify regarding the standards pertaining to procedures and practices of vessel mooring operations.

Plaintiff further challenges the bases of Capt. Campana's opinions, contending that he failed to conduct a thorough and independent analysis of the evidence available to him before reaching his conclusions. The Court also finds such argument unpersuasive. According to Capt. Campana's expert report and affidavit, he visited the Ergon Terminal twice to inspect the equipment involved in the accident and take measurements of the dock on which Plaintiff was standing on November 14, 2011. Capt. Campana also relied on more than twenty-five separate documents or sources of information in addition to his physical inspection of the Egron Terminal. Having considered of this information, Capt. Campana

7

then formulated his expert opinions based on his extensive professional experience. The Court finds that Capt. Campana's opinions are suficiently reliable within the meaning of Rule 702 and *Daubert*. Any alleged deficiency regarding the bases and sources of Capt. Campana's opinions go to the weight to be afforded to his opinions, rather than their admissibility. Plaintiff may subject Capt. Campana to vigorous cross-examination in an effort to diminish any weight the Court gives his opinions when making its findings of fact. In addition, the Court observes that this matter will be tried to the bench and not a jury. As a result, the danger that the factfinder will place improper weight on Capt. Campana's opinions is not implicated here. *See Young v. BP Exploration & Prod. Inc.*, 2012 WL 2087405, at *2 (E.D. La. June 8, 2012) (Barbier, J.).

Finally, Plaintiff argues that Capt. Campana's opinions on the ultimate issue of causation are inadmissible. The Court observes that an expert witness is permitted to give his opinions on an "ultimate issue" of fact, assuming he is qualified to do so, but he is not permitted to make credibility determinations or offer conclusions of law. Fed. R. Evid. 704; *see also Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law . . . nor, may an expert go beyond the scope of his expertise in giving his opinion."); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("Fed. R. Evid. 704 abolished the per se rule against testimony regarding ultimate issues of fact. . . . Rule 704, however, does not open the door to all opinions."). While the Court recognizes that distinguishing between admissible testimony regarding the inferences that can be drawn from facts of a certain case and an inadmissible ultimate legal conclusion on causation is often a fine line, the Court must make such distinctions. Nevertheless, at this time, the Court cannot do so without a specific line of questioning or testimony before it.

The Court reminds OSG that, to the extent Capt. Campana seeks to testify as to ultimate legal conclusions, such testimony is inadmissible. *See, e.g.*, *In re Midland Enters.*, 2002 WL 31780156, at *3 (E.D. La. Dec. 11, 2002) (Africk, J.); *Jacobs v. N. King Shipping Co., Ltd.*, 1998 WL 28234, at *2 (E.D. La. Jan. 23, 1998) (Clement, J.).

As the Court has found that Capt. Campana is qualified to testify based on his experience, that he has formulated reliable opinions, and that his testimony will be helpful to the Court as provided for in Rule 702, Plaintiff's motion *in limine* to exclude Capt. Campana's testimony at trial is **DENIED**.

## II.     Plaintiff's Request for Relief from the Scheduling Order

In the event the Court permits Capt. Campana to testify, Plaintiff requests in the alternative to be relieved from the scheduling order so that he can retain a marine safety expert. The Court's scheduling order afforded Plaintiff several months to analyze the evidence produced in discovery and determine whether or not expert testimony would be necessary for him to prove his case. Plaintiff ultimately concluded that expert testimony was not necessary and declined – as was his right – to retain such a marine safety expert by the deadline set forth in the scheduling order. Given that there are few witnesses to this accident, OSG reached a different conclusion and timely retained an expert witness. OSG was under no obligation to inform Plaintiff of this trial strategy until its March 19, 2013 deadline for exchanging reports.

Plaintiff has given no justification whatsoever for his failure to timely retain a marine safety expert. A scheduling order may not be modified unless the party seeking relief from such order shows "good cause" for the modification. Fed. R. Civ. P. 16(b)(4). The Fifth Circuit has "interpreted Rule 16(b)(4)'s 'good cause' standard to require the movant 'to

show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *Puig v. Citibank, N.A.*, 2013 WL 657676 at *5-6 (5th Cir. Feb. 22, 2013) (quoting *S & W Enters., L.L.C. v. Southtrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003)). Given that Plaintiff has no explanation for his failure to retain an expert witness in accordance with the scheduling order, Plaintiff has failed to show good cause under Rule 16(b)(4). Plaintiff, as master of his case, made a strategic decision when he declined to retain an expert. In addition, affording Plaintiff the relief he seeks will prejudice OSG's right to retain rebuttal expert testimony. Thus, Plaintiff's alternative request for relief from the scheduling order is **DENIED**.

Accordingly, for the reasons set forth above,

**IT IS ORDERED** that Plaintiff's motion *in limine* is **DENIED** in all respects.

**New Orleans, Louisiana, this 10th day of May, 2013.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**